# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **Reliance Insurance Co.,** | ) | **CASE NO. 1:01 CV 62** |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Keybank U.S.A., National Association,** | ) | **Order** |
| | ) | |
| **Defendant/Counter-Claimant/** | ) | |
| **Third Party Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **Tri-Arc Financial Services, Inc., et al.,** | ) | |
| | ) | |
| **Third Party Defendants.** | ) | |

## INTRODUCTION

This matter is before the Court upon Key's Motion to Compel Production of Notes Constituting Draft Expert Report (Doc. 616). For the reasons that follow, the motion is GRANTED.

## ANALYSIS

1

At deposition, one of Swiss Re's expert, Mr. Wagner, testified concerning his expert report as follows,

    Q:    Did you write this report?

    A:    Yes, I did.

    Q:    Did the lawyers write the report?

    A:    I believe I just said I wrote the report.

    Q:    Every word of it?

    A:    I wrote every word of it.

Later, when questioned by Swiss Re, Wagner "explained" his testimony on this precise issue.

    Q:    When you said you had written your report, you didn't mean you physically typed them, did you?

    A:    No, I did not.

    Q:    In the process of preparing your report, did you tell [Swiss Re's attorneys] your opinions and convey your opinions to [them]?

    A:    Yes, I did.

    Q:    Did [one of Swiss Re's attorneys], in turn, provide you with copies of those opinions you conveyed?

    A:    ... Yes....

    Q:    Just so I'm clear, when you were talking about writing your report, that is what you meant when you said you wrote those words?

    A:    Yes.

Not surprisingly, Key questioned Swiss Re's expert further.

    Q:    I asked specifically did the lawyers write your report. You answered me, "no." Do you recall that?

> A: I wrote the report. I had assistance with producing the document. It was made available to utilize their services to type it and produce it. I had adequate review of drafts and corrections and submissions, and they– in no way did the attorneys write my report.
>
> Q: So you wrote the report?
>
> A: I authored the report.
>
> Q: You just said, "I wrote the report," correct?
>
> A: I wrote the report. I authored it. I did not type it or produce it–
>
> \*\*\*
>
> A: So when you say you "wrote the report," what do you mean?
>
> \*\*\*
>
> Q: The notes of my report that were taken by the attorneys, transmitted to staff, who did the typing, and then the drafts were routed to me.

Key moves the Court to compel Swiss Re to produce the "notes" reflecting the conversation between Swiss Re and its expert. According to Key, these notes constitute a "draft" of the expert's report. Key points out that the parties agreed to exchange all drafts of their respective expert reports. Swiss Re opposes Key's motion. According to Swiss Re, the notes are protected by the work product doctrine. Swiss Re also claims that the notes do not constitute a draft because they were not shown to the expert. Key argues that the notes are not protected work product or, alternatively, Swiss Re waived any such protection.

Upon review, the Court finds that Key's motion must be granted. The work product doctrine "is designed to allow an attorney to 'assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference...to promote justice and to protect [his] clients' interests'." *In re*

3

*Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 295 (6th Cir. 2002)(*quoting Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947)). "Fact" work product, which consists of the "written or oral information transmitted to the attorney and recorded as conveyed by the client" may be obtained pursuant to Fed. R. Civ. Proc. 26(b)(3) upon a showing of substantial need and inability to otherwise obtain the information without material hardship. *See Toledo Edison Co. v. G.A. Technologies, Inc.*, 847 F.2d 335, 339-40 (6th Cir.1988). However, absent waiver, a party may not obtain the "opinion" work product of his adversary; i.e., "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories." *In Re Columbia*, 293 F.2d at 289 (*citing In re Antitrust Grand Jury*, 805 F.2d at 163-64 (citations omitted)).

With regard to discovery of expert materials, Rule 26(a)(2)(B), requires a litigant to voluntarily disclose "all data or other information considered by the witness in forming the opinions." Where the expert reviews materials otherwise protected by the work product doctrine, the majority of courts find that the disclosure requirements contained in Rule 26(a)(2)(B) trump the non-disclosure protections afforded under Rule 26(b)(3). *See, e.g.*, *In Re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed.Cir.2001); *Herman v. Marine Midland Bank*, 207 F.R.D. 26 (W.D.N.Y. 2002)(noting that majority of district courts concur with the holding in *In Re Pioneer* that disclosure of otherwise protected work product is required if it is considered by the expert); *Musselman v. Phillips*, 176 F.R.D. 194 (D. Md. 2001).

As an initial matter, the Court is not convinced that the notes taken by Swiss Re's counsel are entitled to protection under the work product doctrine. When questioned whether Swiss Re's attorneys wrote the report, the witness gave an unqualified "no." Even after

4

"clarifying" his testimony, Wagner continued to aver that he merely used the law firm's "services to type it and produce it." Thus, when cornered, the expert attempted to "explain" his testimony by claiming that the attorneys simply "mechanically prepared" his report based on the notes, which were taken by the attorneys and "transmitted" to staff for typing. Based on this witness's testimony, Swiss Re's attorneys were not acting in their capacity as lawyers during this process. Rather, the attorney was simply a conduit between the expert and the secretary, who typed the report.[1] As such, the notes are not entitled to work product protection.

For these same reasons, the Court finds that the notes constitute a "draft" of the opinion. The Court is greatly disturbed at the inconsistent testimony given by Wagner. At the end of the day, Wagner testified that he orally gave his opinions to the attorneys, who put them to paper. The Court finds that the recording of his opinions by the attorneys constitutes an initial draft of the report. In its brief in opposition, Swiss Re claims that any such characterization defies common sense. According to Swiss Re, one of its attorneys–not Wagner–drafted the report on his behalf and then shared a hard copy of the report with the expert. Thus, Swiss Re argues that

---

[1] Both Key and Swiss Re rely on the following testimony in support of their respective positions,

> Q:    Did you dictate your report to the attorneys?
>
> A:    I did not–did I dictate it? They took the words and opinions down. I don't know that they dictated it word for word.

The Court finds that this testimony favors Key's position. Wagner does not deny that the attorneys merely acted as an intermediary. Rather, he is simply indicating that the attorneys may not have taken down the information verbatim. The Court finds that this reading is the only reading remotely consistent with his earlier testimony, in which he averred that the attorneys did not write his report.

5

the notes at issue are truly "notes" and cannot be considered a draft report. While Swiss Re's theory may contain more "common sense" than Wagner's version of the events, it is directly contradicted by Wagner's testimony. In addition, as Key points out, Swiss Re provides no evidentiary support for its new position. This Court simply will not reward the type of gamesmanship displayed by Wagner.

Even assuming the work product doctrine applies, the Court finds that Swiss Re must produce the notes pursuant to Rule 26(b)(3). In the event work product applies, the notes constitute "fact" work product under Sixth Circuit law. *See Toledo Edison Co.*, 847 F.2d at 339-40 (6th Cir.1988).[2] Fact work product is discoverable if the opponent shows a substantial need for the material and is otherwise unable to obtain the information without undue hardship.

In this case, Key argues that it needs the notes in order to test whether Wagner actually authored the report at issue. Key points out the obvious inconsistencies in Wagner's testimony and further points out that Swiss Re is now claiming that its attorneys "assisted" Wagner by drafting the initial and rebuttal reports themselves. According to Key, it is entitled to discover the contents of the notes in order to ascertain the degree to which Wagner actually participated in the production of the report. Swiss Re claims that the Advisory Committee Notes to Rule 26(a)(2)(B) contemplate that an attorney may provide "assistance" in the preparation of an expert report. As such, Swiss Re claims that there is nothing wrong with the fact that its attorneys "assisted" Wagner in drafting the report.

---

[2] Key indicates in its brief that it is not seeking any "editorial remarks, mental impressions, or legal theories" contained in the notes. The Court finds that Key would not be entitled to this information in any event because this information constitutes opinion work product and is not discoverable absent a waiver.

Upon review, the Court agrees with Key.  Although Swiss Re correctly notes that the Federal Rules contemplate that an attorney may provide assistance in the preparation of the report, "...the assistance of counsel contemplated by Rule 26(a)(2)(B) is not synonymous with ghost-writing."  *Manning v. Crockett*, 1999 WL 342715 (N.D. Ill. May 18, 1999).

> A party receiving an adversary's expert's signed report has a right to rely upon the document for what it purports to be–the expert's considered analysis of facts and statement of opinions applying the expert's special education, training and experience.  Experts participate in a case because, ultimately, the trier of fact will be assisted by their opinions....  They do not participate as the alter-ego of the attorney who will be trying the case....  An expert who can be shown to have adopted the attorney's opinion as his own stands less tall before the jury than an expert who has engaged in painstaking inquiry and analysis before arriving at an opinion.

In short, given the inconsistent testimony offered by Wagner, together with Swiss Re's suggestion that its attorneys drafted the expert reports, Key has a substantial need for the notes.  The notes, or lack thereof[3], are essential to permit Key to effectively cross-examine Wagner.  In addition, given Wagner's less than forthright testimony, Key has no other means to obtain the information.  As such, the Court finds that, even assuming the notes are otherwise protected by the work product doctrine[4], Key is entitled to them pursuant to Rule 26(b)(3).

---

[3] In a footnote, Swiss Re suggests that at least one of the lawyers involved in the drafting process erased certain notes from his computer or, alternatively, did not take notes.

[4] The Court finds Swiss Re's work product argument incongruous with its position that the opinions set forth in the report are those of Wagner.  Swiss Re argues that the notes need not be produced because they were never shown to Wagner and, therefore, he could not have relied on them in forming his opinion.  To accept Swiss Re's argument would mean that Wagner provided information to Swiss Re's lawyer, who in turn decided what information should be contained in the report.  It seems that the decision as to what to include in the report, if protected by work product, would render the opinion that of Swiss Re's attorney.  On the other hand, if

**CONCLUSION**

For the foregoing reasons, Key's Motion to Compel Production of Notes Constituting Draft Expert Report is GRANTED.

IT IS SO ORDERED.

            /s/ Patricia A. Gaughan
            PATRICIA A. GAUGHAN
            United States District Judge

Dated: 3/3/06

---

Swiss Re merely dictated the expert's opinions, which would render work product protection unavailable, the opinions set forth in the opinion would more likely be those of the expert.