**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Reliance Insurance Co.,** | ) | CASE NO. 1:01 CV 62 |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Keybank U.S.A., National Association,** | ) | <u>Order</u> |
| | ) | |
| **Defendant/Counter-Claimant/** | ) | |
| **Third Party Plaintiff,** | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **Tri-Arc Financial Services, Inc., et al.,** | ) | |
| | ) | |
| **Third Party Defendants.** | ) | |

### **INTRODUCTION**

This matter is before the Court upon Key's Motion for Reconsideration on the Issue of Lease Extensions (Doc. 699). For the reasons that follow, the motion is DENIED.

### **FACTS**

This case involves the issuance of residual value insurance policies covering certain

1

automobile leases.  This Court previously ruled on the parties' cross-motions for summary judgment on the issue of damages.  In that opinion, the Court concluded that Key was entitled to coverage as a matter of law for leases terminated prior to the declared termination date on the grounds that early terminations were a reasonable form of mitigation that ultimately benefitted Swiss Re.  In support of its position, Key pointed to a report in which its expert testified that the use of early terminations saved Swiss Re "tens of millions of dollars."  Key made the same argument with regard to lease extensions, i.e., Key pointed to its expert report for the proposition that lease extensions saved Swiss Re money.  Upon review, however, the expert report did not support the latter point.  Thus, the Court concluded that early terminations were entitled to coverage as a result of Key's mitigation efforts, but lease extensions were not.

Key moves the Court for reconsideration of the ruling regarding lease extensions.  Swiss Re opposes the motion.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure do not provide for motions for reconsideration. "Instead, such motions, if served within ten days of entry of judgment, are considered motions to alter or amend judgments pursuant to [ ] Rule 59(e)." *Stubblefield v. Skelton*, unreported, 117 F.3d 1421 (6th Cir. July 10, 1997), *citing Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982).  "Generally, there are three major situations which justify a court reconsidering one of its orders: 1) to accommodate an intervening change in controlling law; 2) to account for new evidence not available at trial; or 3) to correct a clear error of law or to prevent a manifest injustice." *Hancor, Inc. v. Inter American Builders Agencies*, 1998 WL 239283 (N.D. Ohio March 19, 1998), *citing In re Continental Holdings, Inc.*, 170 B.R. 919, 939 (Bankr. N.D. Ohio

1994). The ten day filing period, however, is jurisdictional in nature, and any motion to reconsider filed outside this time frame is of no effect. *Feathers v. Chevron, U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998).

### **ANALYSIS**

Key argues that the Court erred in granting summary judgment in favor of Swiss Re on the issue of lease extensions. According to Key, the Court applied an incorrect standard with regard to mitigation. Key claims that whether the practice of extending leases actually reduced damages is irrelevant. Rather, its actions need only have been reasonable at the time Key made the decision to issue lease extensions. In response, Swiss Re argues that the Court applied the correct standard in addressing lease extensions. According to Swiss Re, the Court applied a "reasonableness" standard and properly held that Key failed to present evidence from which a jury could conclude that Key's actions regarding leases extensions constituted a reasonable form of mitigation.

Upon review, the Court finds that Key's motion must be denied. The insurance policies at issue in this case do not provide coverage for leases extended beyond 120 days. Thus, absent some additional reasoning, Key may not recover for losses incurred on extended leases. Key, however, argued that it is entitled to coverage because the act of extending leases amounts to a mitigation effort undertaken in an effort to avoid losses. "Mitigation," however, is not generally recognized as an affirmative claim. Rather, typically, a defendant asserts "failure to mitigate" as an affirmative defense to plaintiff's claim for breach of contract. The Court endeavored to find a similar case, i.e., one in which a plaintiff seeks to recover otherwise excluded losses based on a

3

mitigation theory, but to no avail.[1] Nor did either party cite any case on point. Thus, the Court was left to transform an affirmative defense into a claim for relief.

The Court takes this opportunity to expound on its prior holding with regard to lease extensions. The first task faced by the Court is to ascertain which party bears the burden of proof. On the very unique facts of this case, the Court finds that Key bears the burden of establishing that it is entitled to recover for losses incurred on extended leases. Losses incurred on these leases are not covered by the policies. To place the burden of proof on Swiss Re to negate the reasonableness of Key's lease extension program makes no sense in that coverage does not exist for these leases in the first place. Rather, in order to "gain" coverage for these leases, Key bears the burden of establishing that its lease extension program was a "reasonable" response to Swiss Re's alleged breach. Accordingly, the Court finds that Key bears the burden at trial of establishing the reasonableness of its program. See, e.g., *First Union Corp. v. Gulf Ins. Co.*, 2000 CVS 3558 (N.C. Sup. Ct. Div. March 5, 2002) (insured required to demonstrate a sound basis for engaging in mitigation effort).

Having established that Key bears the burden of establishing the reasonableness of its lease extension program, the Court now turns to the evidence presented by Key during the summary judgment stage. In its motion for reconsideration, Key points out that it relied on the following evidence in support of its position that it should be entitled to recover for losses incurred on lease extensions,

---

[1] The parties both cited *First Union Corp. v. Gulf Ins. Co.*, 2000 CVS 3558 (N.C. Sup. Ct. Div. March 5, 2002), which the Court addressed in its summary judgment opinion and further cites to herein.

- Deposition testimony from a Tri-Arc employee who testified that if one uses the same depreciation schedule in effect at the front part of the lease, one "actually mitigate[s] a loss potentially or even eliminate[s] it if you can come back in the first place because the depreciation of that extra two months...would be, by contract, greater than what the actual depreciation would typically be by actual value;"

- Deposition testimony from a Swiss Re employee who testified generally that various techniques, including subvention of the interest rate, re-leasing, lease extensions and some cash-back programs help to reduce losses;

- Testimony from Swiss Re's expert who stated that "on a very generalized basis" lease extensions can be an effective way to mitigate residual value loss.

Notably absent is any evidence from any Key employee[2] or documentary evidence discussing in detail–or even in a general fashion–the lease extension program actually utilized by Key in this case.  While the Court finds that Key's evidence establishes that lease extension programs may mitigate damages, there is absolutely nothing tying this theory to the specific program employed in this case.  As such, the Court finds that Key fails to present any evidence from which a jury could conclude that its lease extension program was a "reasonable" form of mitigation, such that Key can avoid the clear policy terms excepting lease extensions from coverage.

Key argues that the Court erroneously held that Key must prove that its program actually succeeded in reducing Swiss Re's damages.  To the extent the Court's opinion could be construed in this manner, the Court clarifies its holding here.  In analyzing the early termination program, Key came forward with evidence establishing that the program saved Swiss Re "tens of

---

[2] Key cites to the deposition testimony of Richard Vonk, a Key employee, in its motion for reconsideration.  That testimony was available to Key during the initial briefing and, as such, the Court will not consider it now.

5

millions of dollars." Swiss Re offered no evidence contradicting this fact. Thus, the Court concluded that Swiss Re's substantial savings due to Key's actions conclusively established the reasonableness of Key's "mitigation" efforts. The Court agrees with Key that the converse will not always be true, i.e., the inability to establish a savings to the breaching party does not necessarily indicate a lack of reasonableness. Unlike its analysis of lease extensions, Key did not offer evidence that its program did not operate to the detriment of Swiss Re. Although this type of evidence is not required, Key offered absolutely no evidence from which a jury could conclude that *Key's* lease extension program was a reasonable response to Swiss Re's alleged breach. Accordingly, Swiss Re is entitled to summary judgment.[3]

**CONCLUSION**

For the foregoing reasons, Key's motion for reconsideration is DENIED.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 12/20/06

---

[3] Key attempts to argue that Swiss Re is precluded from arguing that Key's program was not reasonable because it failed to present this argument during summary judgment. This Court disagrees. The "reasonableness" of Key's program was squarely before the Court during the summary judgment phase. Nor does the Court accept Key's argument that Swiss Re agreed that Key's program was reasonable by failing to assert an affirmative defense of "failure to mitigate" with regard to Key's lease extension program.

6